IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | No. 14-04048-01-CR-C-SRB | |
| ) | | |
| ) | | |
| CAROL JOYCE NOBLE, ) | | |
| ) | | |
| Defendant. ) | | |

## REPORT AND RECOMMENDATION

Pending before the Court is defendant Carol Joyce Noble's motion to suppress statements made, and suggestions in support thereof. (Doc. 30). Defendant alleges the statements sought to be suppressed were the result of an involuntary, unknowing, and unintelligent waiver of her rights under <u>Miranda</u>. The Government has filed suggestions in opposition to Defendant's motion. (Doc. 35). An evidentiary hearing regarding this motion to suppress was held on October 11, 2016.

## Background

Defendant Carol Joyce Noble is charged by indictment with three counts of bank fraud in violation of 18 U.S.C. § 1344, arising out of a loan obtained from Central Trust Bank in Jefferson City, Missouri around September, 2011. (Doc. 1). Specifically, the indictment alleges that in connection with obtaining the loan, the house number of Defendant's house was switched with her neighbor's more valuable home, resulting in a fraudulently inflated appraisal. Defendant sought the loan for the purpose of purchasing a convenience store in Stover, Missouri. When Defendant defaulted on the Central Trust Bank loan, an investigation commenced.

On June 2, 2014, at approximately 10:43 am, Defendant was interviewed by FBI Special Agents Sean McDermott and Stacy Banks. The interview was conducted at Lake Regional Hospital in Osage Beach, Missouri, where Defendant was a patient. Defendant was in the custody of the Morgan County Jail, but was on a medical furlough at Lake Regional Hospital.

The interview was audio-recorded.[1] At the outset of the interview, Defendant was advised of her Miranda rights, and also signed an "Advice of Rights" form which indicated her consent to be interviewed without a lawyer present. (Government Ex. 4). Defendant also clarified her rights by asking the agents, "I can stop answering at any time?" To which Special Agent McDermott responded, "absolutely." (Government Ex. 1 at 0:59). During the course of the recorded interview with Special Agents McDermott and Banks, Defendant admitted that her husband had switched the numbers on their home and the neighbor's home, "because the house looks better than ours did." (Government Ex. 1 at 15:56). Defendant also admitted that she was present at the property during the appraisal, but allowed the appraiser to believe he was appraising the correct house. (Government Ex. 1 at 20:44).

During her time at the Lake Regional Hospital, Defendant was administered several doses of both morphine and hydrocodone. (Government Ex. 2). On June 1, 2014, the day prior to the interview, Defendant was administered morphine at 7:57 am and hydrocodone at 6:01 pm. These represent the last doses of each medication she was given prior to being interviewed by Special Agents McDermott and Banks. (Government Ex. 2).

## Analysis

Defendant asserts that the statements she made during the interview should be suppressed because she was so heavily medicated on opiates at the time of the confession that she does not remember making such statements, nor does she remember waiving her rights under Miranda. Miranda v. Arizona, 384 U.S. 436 (1966). Defendant also asserts that a statement made by Special Agent Banks, regarding the lack of criminal culpability of an unknowing party changing the address, rose to the level of deception, making her admission involuntary, unknowing, and unintelligent. The Government has responded in opposition, asserting that Defendant voluntarily made the statements to the agents, following an intelligent, knowledgeable, and voluntary waiver of her Miranda rights. The Court will address each of these arguments below.

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. Amend. V. Further, it is a violation of the Fifth Amendment to use a defendant's coerced statement against

---

[1] There is approximately a six-minute gap near the end of the recording which resulted from a depleted battery, however at the hearing on this motion to suppress, FBI Special Agent Sean McDermott testified that nothing of substance was said, and nothing inconsistent with previously made statements was spoken during the gap.

2

the same defendant in a criminal trial.  In Miranda v. Arizona, the United States Supreme Court held that a waiver of the Fifth Amendment privilege against self-incrimination is valid only if a defendant makes such waiver voluntarily, knowingly, and intelligently.  384 U.S. 436, 444 (1966).  "A waiver is voluntary if it 'was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'"  United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).  When determining whether a statement was voluntarily given, courts look to the totality of the circumstances.  United States v. Havlik, 710 F.3d 818, 822 (8th Cir. 2013).  "We consider, among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition."  United States v. Daniels, 775 F.3d 1001, 1004-05 (8th Cir. 2014) (quoting Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004)).

Here, the Court believes that Defendant voluntarily, knowingly, and intelligently waived her rights under Miranda, and that her statements were voluntarily made to the agents, therefore suppression of these statements is not proper.  The Court notes at the outset that intoxication does not per se make a custodial statement involuntary, rather, the voluntariness of such a statement is examined under a totality of the circumstances approach and is valid so long as the individual's will was not overborne and the confession was the product of a rational intellect and a free will.  United States v. Givens, 712 F.2d 1298, 1302 (8th Cir. 1983) (internal quotations and citations omitted); see also United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990) ("Intoxication and fatigue do not automatically render a confession involuntary; rather, the test is whether these mental impairments caused the defendant's will to be overborne.")  The most recent dose of morphine Defendant was administered was more than 26 hours prior to the interview and her most recent dose of hydrocodone was more than 16 hours prior to the interview.  Following the interview, Special Agent McDermott sent an email to Defendant's treating physician, Dr. Zubair Khan, MD, and asked if the morphine and hydrocodone administered to Defendant the day prior to the interview would have affected her judgment and/or lucidity at the time of the interview to which Dr. Khan responded, "[p]atients react differently to medications, however this should not affect a patient's judgment/lucidity in a similar circumstance." (Government's Ex. 3).

3

At October 11, 2016 hearing regarding this motion to suppress, Special Agent McDermott testified that Defendant appeared lucid and coherent during the interview, and that he never questioned Defendant's lucidity or coherence. Special Agent McDermott also testified that upon arrival at the hospital to talk to Defendant, he asked the nurse stationed outside of Defendant's room if Defendant was in capacity to talk to the agents and he was told that she was fine and that they could talk to her. Further, after reviewing the audio recording of the interview, it does not appear to the Court that Defendant's answers indicate that she was intoxicated, such that would render her waiver of rights invalid or her subsequent statements involuntary. Defendant was advised of her <u>Miranda</u> rights at the outset of the interview, and she signed an advice or rights form. The Court notes that Defendant further clarified her rights by asking if she could stop answering questions at any time. The entire interview took place over a period of approximately a half-hour, and only Defendant and Special Agents McDermott and Banks were present.

Viewing all of these factors in totality, the Court is of the opinion that Defendant's waiver of her rights was made voluntarily, intelligently, and with the requisite knowledge. Further, the record demonstrates that Defendant was lucid and coherent during the interview with the agents. Therefore, the Court finds that Defendant's motion to suppress statements, based on the argument that Defendant was so heavily medicated on opiates that she could not voluntarily, knowingly, and intelligently waive her rights, should be denied.

Defendant additionally argues in her suggestions in support that a statement made by Special Agent Stacy Banks regarding the lack of criminal culpability of an unknowing party changing the address, rose to the level of deception making her admission involuntary, unknowing and unintelligent. After Defendant had admitted to the agents that the house number had been changed, Special Agent Banks asked Defendant who switched the number. Defendant initially did not name a person, because she did not want him "to be involved." After Defendant stated that she had not paid someone to switch the numbers, and indicated that the person who switched the numbers was unware of the reason for making the switch, Special Agent Banks said, "then in all honesty he's probably not in any trouble." (Government Ex. 1 at 15:29). Defendant alleges that this statement was so deceptive that it rendered her admissions involuntary, unknowing, and unintelligent. The Government has responded by stating that this

4

statement by Special Agent Banks is not even deceptive, much less sufficiently manipulative that it caused Defendant's will to be overborne.

Here, the Court finds that the allegedly deceptive statement by Special Agent Banks did not render Defendant's subsequent admission involuntary. The use of various interview tactics by officers will not cause a confession to be involuntary "unless 'the overall impact of the interrogation caused the defendant's will to be overborne.'" United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005) (quoting Jenner v. Smith, 982 F.2d 329, 334 (8th Cir. 1993)). The Court finds no evidence of intimidation, coercion, or deception on the part of the agents, such that would warrant suppression of the statements made by Defendant. The Court does not find any aspect of the interview, including the allegedly deceptive statement by Special Agent Banks, caused Defendant's will to be overcome, and would justify suppression of her statements as being involuntary. The totality of the circumstances demonstrate that Defendant retained her own will through the duration of the approximately half-hour interview. Therefore, suppression of the statements made, on the theory that Special Agent Banks' allegedly deceptive statement made Defendant's admissions involuntary, is not proper in this instance.

## Conclusion

For the reasons stated above, the Court concludes that Defendant's contentions regarding suppression of statements made in this case are without merit, and her motion to suppress should be denied.

IT IS THEREFORE RECOMMENDED that Defendant's motion to suppress statements made should be DENIED. (Doc. 30).

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 3rd day of February, 2017, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge